UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

CRIMINAL NO. 03-10389-PBS

|  |  |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| v. | ) |
| | ) |
| DAVID PEREZ, | ) |
| Defendant. | ) |

**DEFENDANT'S MOTION TO SUPPRESS EVIDENCE AND STATEMENTS**

The defendant, David Perez by his attorney, John W. Laymon moves that all evidence, including the subject firearm which were seized by law enforcement officers from a red Durango on February 14, 2001, as well as any statements defendant made during custodial interrogation be suppressed in any criminal proceedings against him. As reason therefore, as more fully set forth in the accompanying Memorandum of Law, the defendant asserts that the stop of the Durango, the search of the area surrounding him and of his person and his arrest were carried out in violation of his rights under the Constitution of the United States. The defendant further directs this Court's attention to his attached Affidavit in Support of this Motion.

DAVID PEREZ
By his attorney,

*/s/ John Laymon*

John W. Laymon, Esquire
Law Offices of John W. Laymon
77 Franklin Street - 3rd Floor
Boston, MA 02110
617-338-0089
BBO# 289460

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

FILED
IN CLERKS OFFICE

2004 APR 28 A 11: 19

CRIMINAL NO. 03-10389-PBS

U.S. DISTRICT COURT
DISTRICT OF MASS.

|  |  |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| v. | ) |
| DAVID PEREZ,<br>　　　Defendant. | ) |

## DEFENDANT'S MOTION TO SUPPRESS EVIDENCE

**Procedural Background**

On February 14, 2001, this Defendant along with his co-defendant, Rivera were arrested in Lowell, MA for charges of possession of firearms. Thereafter, on or about May 31, 2001, the Defendant was arraigned in the Middlesex Superior Court in Lowell on the following Indictments: 2001-389-001 Possession of firearm; 2001-389-001 Armed Career Criminal; 2001-389-002 Possession of Ammunition; 2001-389-002 Armed Career Criminal; 2001-389-003 Possession of Marijuana. On or about May 31, 2001, the defendant defaulted on these cases. Approximately two and a half years later on November 14, 2003, a federal complaint was issued against this defendant on the charge of being a Felon in Possession of a Firearm. In December, 2003, a Federal Grand Jury sitting in Boston, MA returned the above captioned Indictment against this defendant on the charge of Felons in Possession of Firearm. Following a January 26, 2004 detention hearing and discovery, the defendant files this Motion to Suppress.

**Statement of Facts**

On February 14, 2001 at approximately 7:00 p.m. Lowell Police Officers John Cullen and Michael Burke (hereinafter "Cullen" and "Burke") were on a routine patrol on Jackson Street, Lowell, MA. While on patrol, the officers observed a Durango containing two Hispanic males double parked in front of 300 Jackson Street, Lowell, MA. The officers pulled alongside this motor vehicle and began asking questions of the driver. Officer Cullen asked the driver to roll down his window and he asked him if there was anything wrong. The driver obediently rolled down his window and replied in the negative. However, Officer Cullen believed that the driver's speech was slurred and his eyes were glassy. At that time, Officer Cullen instructed the driver and passenger to remain in the vehicle and he backed up the cruiser. The occupants again obeyed the officers and remained in the Durango, as Officer Cullen parked the cruiser behind the vehicle and both officers approached the vehicle.

Officer Cullen approached the driver's side and asked him for his license and registration. In the meantime, Officer Burke approached the passenger side. While standing next to the passenger side, Officer Burke peered into the Durango and indicated to Officer Cullen that he recognized the driver as an individual he had arrested in June, 1999 for Armed Assault to Murder. While peering into the subject vehicle, Officer Burke did not see any firearm in the vehicle. Thereafter, Officer Cullen radioed dispatch to request a warrant check on the driver, Francisco Rivera. This check revealed that Rivera had an outstanding warrant (No. 9911CR004165) for Armed Assault to Murder (See Lowell Police Department Arrest Report, Police Officer's Statement, which is attached hereto and incorporated hereto as Defendant's Exhibit A).

Following receipt of the criminal record check information, Officer Cullen asked Rivera to

step out of the vehicle and he was arrested on the outstanding warrant. Officer Cullen then states in the attached police officer's statement that he asked the passenger, David Perez, if he had a license to drive the vehicle. Officer Cullen then claims Mr. Perez allegedly responded that he did not have his license on his person. Officer Cullen further states that he radioed dispatch for a criminal record check on Perez. Dispatch allegedly radioed back to him that Perez might have a warrant but they needed confirmation of his date of birth.[1] Having received no negative information on Perez, Officer Cullen asked him to step out of the vehicle. Perez then steps out of the vehicle, and Officer Cullen claims that he noticed in plain view the handle of a silver handgun sticking from under the passenger's seat. Officer Cullen then yelled gun, pulled his service revolver and commanded Perez to the ground. A pat frisk of Perez revealed some money but, no weapons. Thereafter, while in a custodial setting but prior to being apprised of his Miranda warnings, Officer Cullen asked Perez if he had a firearms license to which he allegedly replied "no." Allegedly Rivera overheard the questions, and stated "we don't need them." Perez then allegedly said "my best bud got capped. I need it for protection." Perez was then placed under arrest and both Hispanic men were transported to the station. An inventory search of the vehicle allegedly revealed another handgun under the driver's seat.

At the booking desk in the police station, Rivera not Perez was asked by Lt. Flaherty "you didn't learn not to carry from the last time." Rivera allegedly replied, "My brother got killed I need it to protect myself."

---

[1] It should be noted that on the attached transcript of Police Recordings of February 14, 2001, pages 2-3, there is no indication that the radio dispatch ever said that Perez might have a warrant. See Government's Transcript of Police Turrent Recordings, dated 2/14/01, which is attached hereto and incorporated herein as Defendant's Exhibit B.

**Issues**

1. Whether the traffic stop of the motor vehicle, which the defendant was a passenger was a constitutional seizure, since the police officer did not have probable cause to believe a traffic violation had occurred.

2. Whether assuming the traffic stop was valid, the police officers temporary detention of the defendant was an unconstitutional seizure, since they did not have a reasonable suspicion that he was carrying a firearm or contraband.

3. Whether defendant's incriminating statement and/or answers to police officers questioning made during custodial interrogation but prior to being advised of his Miranda warnings should be suppressed at a trial of this case.

**DISCUSSION**

As a general matter, the decision of a police officer to stop an automobile is reasonable, where they have demonstrated probable cause to believe a traffic violation has occurred. Whren v. United States, 517 U.S. 806, 810, 1165 S.Ct. 1769, 135 L.Ed.2d 89 (1996). Moreover, the First Circuit has further held that where it is reasonable for the officers to stop the vehicle they also have the right to temporarily detain the driver. United States v. Bizier, 111 F.3d 214, 217 (1st Cir., 1997). Indeed, the police may stop a vehicle on less than probable cause, as long as they have reasonable or articulable suspicion of criminal activity. United States v. Chhien, 266 F.3d 1, 6 (1st Cir., 2001). However, without reasonable suspicion, the stop is unlawful. See, e.g. United States v. Johnson, 256 F.3d 214, 216-217 (4th Cir, 2001) (stop was unlawful where officers had no reasonable suspicion to believe that car with Georgia license plate was subject to South Carolina "window tinting" law, which only applied to cars required to be registered in South Carolina).

A review of Officer Cullen's police report of this incident indicates that the officers did not stop the subject motor vehicle for any violation of the laws of this Commonwealth. Instead, Officer Cullen states that: "On the above date and time these officers while working patrol in car 8 observed a red 2001 Durango MA plate # 5038TP double parked in front of 300 Jackson Street. We pulled along side the car and I [Officer Cullen] motioned the driver to roll down his windows."[2] Since the officers did not stop the parked vehicle because they had probable cause to believe a traffic violation had occurred, it follows that the stop was not reasonable. See Whren v. United States, 517 U.S. at 806. Nor was the stop justified by a reasonable and articulable suspicion of criminal activity. See United States v. Chhien, 266 F.3d at 1. Thus, the traffic stop of the subject motor vehicle was an unlawful seizure, because the officers did not have probable cause to believe a traffic violation had occurred. The officers also did not have a reasonable suspicion that the defendants were violating the laws of this Commonwealth. United States v. Johnson, 256 F.3d 214, see also United States v. Lee, 317 F.3d 26, 31 (1st Cir., 2003)(citing Terry v. Ohio, 392 U.S. 1, 21 (1968)("warrantless investigatory stops are allowable if and to the extent that police officers have a reasonable suspicion of wrongdoing–a suspicion that finds expression in specific, articulable reasons for believing that a person may be connected to the commission of a particular crime"). Since the traffic stop was unlawful, then it follows that the firearm should be suppressed at a trial of this case, as the fruit of the poisonous tree. See United States v. Rowell (Crim. No. 03-10268-PBS, March, 2004).[3]

Assuming argumento that the Government can establish that the officers can articulate a legally valid basis for stopping the subject vehicle, the detention of the passenger, David Perez

---

[2] See Defendant's Exhibit A, Lowell Police Department Arrest Report.

[3] This case is attached hereto and incorporated herein as Defendant's Exhibit C.

was not. Here, this defendant's temporary detention during this traffic stop constituted a seizure of his person...under the Fourth Amendment. Whren, 517 U.S. at 809-810. Although the issue of whether an officer may detain a passenger during a traffic stop is an open question, it is clear that their authority is limited to the time "pending completion of the stop." Maryland v. Wilson, 519 U.S. 408, 415, 117 S.Ct. 882 (1997). "[A] Fourth Amendment violation occurs when the detention extends beyond the valid reason for the stop. Once a computer check is completed and the officer issues a citation or determines that no citation should be issued the detention should end and the driver should be free to leave." United States v. Santiago, 310 F.3d 336, 341-345 (5th Cir., 2002); United States v. Mesa, 62 F.3d 159, 162 (6th Cir., 1995)(once the purposes of the initial traffic stop were completed, there is no doubt that the officer could not further detain the vehicle or its occupants unless something had occurred during the traffic stop which generated the necessary reasonable suspicion to justify further detention"); United States v. Sandoval, 29 F.3d 537, 540 (10th Cir., 1994)(when the driver has produced a valid license and proof that he is entitled to operate the car, he must be allowed to proceed on his way, without being subject to further delay by police for additional questioning...[unless] during the course of the traffic stop the officer acquires an objectively reasonable and articulable suspicion that the driver is engaged in illegal activity or the driver consents).

In this case, the purpose of the stop was completed after Officer Burke recognized the driver, Mr. Rivera, as an individual he had previously arrested, and then Officer Cullen radioed dispatch to determine if the co-defendant had a prior criminal record. See United States v. Beck, 140 F.3d 1120, 1136 (8th Cir., 1998)(purpose of stop completed once officer completed license and criminal history check on driver, and gave an oral warning for following too closely). After Officer Cullen determined that Mr. Rivera had an outstanding warrant, he asked him to step from

the vehicle and then he placed him under arrest. At this time, neither Officer Burke, who was standing next to the passenger, Mr. Perez, nor Officer Cullen, who had arrested Mr. Rivera outside of the vehicle had any reasonable suspicion that this defendant was carrying a counseled weapon or contraband. However, instead of giving this defendant the option of driving the vehicle away, if he had a valid license on his person, or telling him he could leave the scene, Officer Cullen radioed dispatch for a warrant check, as opposed to a check to determine if Mr. Perez had a valid driver's license. (See Defendant's Exhibit B).[4] Officer Cullen also did not notify the renter of this vehicle, Susan Rivera, even though her cell phone number is listed on the Thrifty car rental agreement.[5] Upon receiving no information from the dispatcher that this defendant had a prior criminal record, Officer Cullen continued his unlawful detention by ordering him out of the vehicle. After Mr. Rivera exited the vehicle, Officer Cullen for the first time states that he observed the handle of this 3" firearm, under the passenger seat.[6] Since the defendant's continued detention occurred following the completion of this stop, when the driver was arrested, and after the Officer did a warrant check on Perez and then ordered him out of the vehicle, it is evident that the further detention was unlawful and that the seizure of the firearm was unlawful as well. See United States v. Starks (No. Crim.03-10187-DPW, dated February 2, 2004).[7] Thus, the subject firearm should be suppressed in a trial of this case, since the officers lacked reasonable

---

[4] It should be noted that Officer Cullen also requested a warrant check for Mark Walker, who could have driven the car from the scene.

[5] The Thrifty car rental agreement is attached hereto and incorporated herein as Defendant's Exhibit C.

[6] The Ballistics Report of March 19, 2001 states that the barrel of this firearm was 2 ½". That report is attached hereto and incorporated herein as Defendant's Exhibit D.

[7] A copy of the decision in Starks is attached hereto and incorporated herein as Defendant's Exhibit E.

suspicion to continue to detain this defendant, who had not acted suspiciously, nor did the officers have reason to believe he was armed and dangerous. See United States v. Starks, 302 F.Supp.2d 76 (D.Mass, 2004); also see United States v. Rowell (No. Crim. 03-10268-PBS (March, 2004)).[8]

If this Court suppresses the subject firearm, it should also suppress any and all statements and/or responses to law enforcement officers' questioning made by this Defendant on February 14, 2001, prior to him being apprised of his so-called "Miranda warnings." See Miranda v. Arizona, 396 U.S. 868, 90 S.Ct. 140 (1969).

When addressing the issue of whether Miranda warnings are required, this Court's initial inquiry should be whether the defendant was in custody during the questioning, since, this is the time when government officers must provide Miranda warnings. Stansbury v. California, 511 U.S. 318, 322 (1994). In order to determine whether this defendant was in custody, this Court can consider the following factors: "Whether the suspect was questioned in familiar or at least neutral surroundings, the number of law enforcement officers present at the scene; the degree of physical restraint placed upon the suspect; and the duration and character of the interrogation. United States v. Ventura, 85 F.3d 709, 711 (1st Cir., 1996).

Viewed against the aforementioned standard, it is evident that this defendant was in custody when Officer Cullen asked the defendant to step out of the motor vehicle, pat frisked him and then asked him if he had a firearm license and he allegedly replied: "No." See United States v. Goodridge, 945 F.Supp. 359 (D.Mass, 1996)(defendant subject to custodial interrogation in his home where two agents were present during questioning as many as four agents were outside his home, the defendant and his wife were separated, the questioning officers did not believe he was

---

[8] A copy of this Court's decision in the Rowell case is attached hereto and incorporated herein as Defendant's Exhibit F.

free to leave, (although they did not communicate that belief to him) and following questioning he was arrested); and United States v. Bullins, 880 F.Supp. 76 (D.N.H., 1995)(defendant subject to custodial interrogation where he was under police guard, not at liberty to leave and separated from his wife while a search warrant was executed by four to five armed officers).

On the evening of February 14, 2001, from approximately 7:00p.m. to after 7:30p.m., defendant Perez was not free to leave the scene of his arrest. Initially, the focus of Officers Cullen and Burke's attention was the driver, Rivera, until they determined he had an outstanding arrest warrant. Then he was arrested. Thereafter, the unsuspecting passenger, Perez was questioned by Officer cullen, who then radioed dispatch for a warrant check. When the dispatch was unable to determine that this defendant had any outstanding warrants, Officer Cullen made further inquiry of Perez, ordered him out of the vehicle and allegedly observed in "plain view" a firearm under his passenger seat. At this time, instead of placing him under arrest, and advising him of his so-called "Miranda rights" Officer Cullen while continuing to detain Perez asked him if he had a license or firearm identification card for the firearm. Mr. Perez's alleged response of "no" suggests that he believed the firearm belonged to him and that he had either actual or constructive possession of it. Knowing that this defendant's response, if presented at trial would suggest to juror's that this defendant possessed the firearm. Officer Cullen continued his custodial interrogation, resulting in the seizure of the firearm are Fourth Amendment violations of defendant's rights, which are prohibited under Miranda. Thus, all statements made by this defendant while in custody but prior to him being advised of his constitutional rights should be suppressed in any criminal proceedings against him.

**Conclusion**

For all of the aforementioned reasons, the firearm seized from under the passenger's seat

of the red Durango on February 14, 2001 should be suppressed in any criminal proceedings against this Defendant. Moreover, any statements made by this defendant during custodial interrogation but prior to him being advised of his "Miranda rights" should also be suppressed in any criminal proceedings against him, due to the officers failure to advise him of his Miranda warnings.

DAVID PEREZ
By his attorney,

*John Laymon*

John W. Laymon, Esquire
Law Offices of John W. Laymon
77 Franklin Street - 3rd Floor
Boston, MA 02110
617-338-0089
BBO# 289460

CERTIFICATE OF SERVICE

I, John W. Laymon, hereby certify on this 27th day of April, 2004, a copy of the foregoing motion was served by first class mail, postage prepaid, upon A.U.S.A. Sandra Bower, One Courthouse Way, Boston, MA, 02210.

*John Laymon*
John W. Laymon