IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) CRIMINAL NO. 03-10389-PBS |
| v. | ) |
| | ) |
| DAVID PEREZ | ) |

## United States' Opposition to Defendant David Perez' Motion to Suppress Evidence and Statements

The United States respectfully submits this response in opposition to Defendant David Perez' Motion to Suppress Evidence and Statements.

### Background

The United States anticipates that testimony and evidence presented at the suppression hearing will reveal the following: On February 14, 2001, at about 7:30 p.m., Lowell Police Department officers John Cullen and Michael Burke observed a car double parked on a public street in the vicinity of 300 Jackson Street. The officers pulled alongside the car and Officer Cullen directed the driver to roll down his window, in order to instruct the driver to move the car. Officer Cullen observed the driver to be glassy-eyed, his eyes half-closed, and his speech was slurred. When asked if he had taken anything, the driver responded that he had smoked some "dope." Officer Cullen instructed the driver and the passenger to remain in the car and Officer Burke backed the cruiser up behind the car. Officer Cullen approached the driver and Officer Burke approached the

passenger side of the car. Officer Burke recognized the driver as Francisco Rivera, whom he had arrested previously for armed assault with intent to murder. A computer check revealed that Rivera had an outstanding warrant for armed assault, assault and battery, and assault with a dangerous weapon from Lowell District Court. Rivera was placed under arrest on the outstanding warrant and escorted by Officer Burke toward the police cruiser to await the transportation wagon.

As Officer Burke was dealing with Rivera, Officer Cullen asked the passenger, David Perez, if he had a valid driver's license to determine whether Perez would be allowed to drive the car away. Perez replied that he did not have it on him, but gave his identifying information to Officer Cullen to verify. Officer Cullen radioed dispatch to determine if Perez had a valid driver's license and was informed that there was a possible warrant on Perez as well and to confirm his date of birth. Officer Cullen asked Perez to step from the vehicle and to produce a photo identification. This was done because of the information concerning the possible warrant on Perez, the seriousness of the offenses for which Rivera was wanted, and because Officer Cullen was alone with Perez at the car while Officer Burke was with Rivera.

As Perez got out of the car, Officer Cullen saw a silver handgun sticking out from under the passenger seat. Officer

Cullen yelled "gun," pulled his service weapon and ordered Perez to the ground. Officer Cullen then recovered the gun, which upon later examination was determined to be a Sundance Industries .25 caliber pistol, serial number 048288, and had 7 rounds in the clip.

After securing the gun and permitting Perez to get up from the ground, Officer Cullen asked Perez if he had a firearms license and Perez said no. Rivera, apparently overhearing the question, commented "We don't need them." Perez further stated, not in response to any questioning, that his best friend had been "capped" and "I need it for protection."

When the officers confirmed that Perez did not have a federal firearms license, Perez was placed under arrest and handcuffed. A search incident to arrest revealed a plastic bag containing what appeared to be, and what later analysis confirmed as, marijuana and $4,043 in cash wrapped in thousand dollar bundles in 20s and 100s. Rivera also was searched before being placed in the transportation wagon which resulted in the seizure of a plastic bag containing what appeared to be, and what later analysis confirmed as, marijuana and $4,060 in currency. Both Perez and Rivera were taken to the Lowell Police Department station for booking. An inventory search of the vehicle resulted in the seizure of another handgun, a black Glock, model 23, 40 caliber with the serial number etched off, located under the

driver's seat. The Glock was loaded with 12 rounds with one in the chamber.

## Discussion

### The Stop

A traffic stop passes muster under the Fourth Amendment if it is supported by a "reasonable and articulable suspicion of criminal activity," *United States v. Chhien*, 266 F.3d 1, 6 (1st Cir. 2001), and is reasonable under the circumstances. *Whren v. United States*, 517 U.S. 806, 809-10 (1996). An investigatory stop is permissible on a reasonable suspicion that a "person has been, is, or is about to be engaged in criminal activity." *United States v. Hensley*, 469 U.S. 221, 227 (1985)(citation omitted). Reasonable suspicion is an intermediate standard requiring more than a "naked hunch," but less than probable cause. *Chhien*, 266 F.3d at 6. Further, the validity of an investigatory stop and detention must be evaluated using common sense and in the context of all of the facts and circumstances surrounding the stop and subsequent events. *Id.* ("[A]n inquiring court must ask whether the officer's actions were justified at their inception, and if so, whether the officer's subsequent actions were fairly responsive to the emerging tableau--the circumstances warranting the stop, informed by what occurred, and what the officer learned as the stop progressed."(citing *United States v. Sowers*, 136 F.3d 24, 26 (1st Cir. 1998)); *United States v. Cook*, 277 F.3d 82, 85

4

(1st Cir. 2002) ("a court must undertake a contextual analysis using common sense and a degree of deference to the expertise that informs a law enforcement officer's judgments about suspicious behavior."); *United States v. Young*, 105 F.3d 1, 6 (1st Cir. 1997)("the nature and duration of subsequent inquiry must be reasonably ... related to the circumstances which justified the interference.")

The investigatory detention here is clearly reasonable. The car was double parked, in violation of Lowell City Ordinance, Article V, Section 13-151 (10), a copy of which is attached at Tab A. Officer Cullen immediately observed the driver to be impaired and the driver admitted to "smok[ing] some dope" that night, further support for reasonable suspicion that "criminal activity was afoot." *Terry v. Ohio*, 392 U.S. 1, 28 (1968). Indeed, the driver had admitted to, at the very least, committing the offense of possession of a controlled substance.

The next steps taken by the officers also were reasonably related to the "circumstances which justified the interference" in the first place and in response to the "emerging tableau." *Young*, 105 F.3d at 6. That is, Officer Cullen properly directed the driver and the passenger to remain in the car and then, once the cruiser was parked, asked the driver for his license and registration. *United States v. Pena*, 920 F.2d 1509, 1514 (10th Cir. 1990)(during a routine traffic stop, the detaining officer

5

may request a driver's license and vehicle registration, run a computer check on the car and driver and issue a citation). Officer Burke recognized the driver to be Francisco Rivera, whom he had arrested before, and a computer check revealed that there was an outstanding warrant for Rivera on several violent offenses. Rivera was arrested and then Officer Cullen attempted to confirm whether Perez had a valid driver's license and would be permitted to drive the car away. As this determination was being made it was reasonable for Officer Cullen to order Perez out of the car regardless of whether he had concern for his safety or reasonable suspicion that Perez had engaged in criminal activity. *See Pennsylvania v. Mimms*, 434 U.S. 106, 111 (1977)(per curiam) (officer may order driver to step out of car during routine *Terry* stop of vehicle); *Maryland v. Wilson*, 519 U.S. 408, 410 (1997)(officer may order all passengers out of car pending completion of traffic stop); *see also United States v. Starks*, 301 F.Supp. 2d 76, 82 (D. Mass. 2004)("officer...may detain a passenger during a traffic stop, even without particularized reasonable suspicion that the passenger has committed any crime.) Here, though, Officer Cullen had a legitimate safety concern because he was alone with Perez at the car, the warrant for Rivera was for serious and violent offenses, and there was potentially a warrant for Perez.

As Perez got out of the car, Officer Cullen saw the gun and

6

ordered Perez to the ground until the officer had secured the weapon. This, too, was a reasonable action, taken in consideration of officer safety.

The investigatory detention here was reasonable from its inception and at every step during the encounter. *United States v. Lee*, 317 F.3d 26, 31 (1st Cir 2003)(upholding continued detention as "the passage of time brought with it new knowledge...that escalated the level of suspicion.") The stop and detention did not run afoul of the Fourth Amendment and accordingly, the Court should deny the defendant's motion to suppress the evidence seized from him and from the vehicle.

**The Statements**

The defendant also seeks to suppress his statement "no" made in response to a question whether he had a federal firearms license and the volunteered statement that "my best bud got capped I need it for protection."

The government submits that the defendant was not in custody when he made these statements and that, therefore, there was no requirement that he be given his *Miranda* warnings. The stop was on a public street, in a neutral setting, and was very brief. The defendant had not been placed under arrest and, at the time he was asked this question, he was no longer on the ground at Officer Cullen's direction. See *United States v. Teemer*, 260 F.Supp.2d 187, 192-93 (D. Maine 2003).

Assuming without conceding, however, that the defendant's liberty was so restricted that he should be treated as in custody at the time he made these statements, the admission concerning the need for the gun for protection is admissible as a "spontaneous utterance." *United States v. Shea*, 150 F.3d 44, 48 (1st Cir. 1998)("statements were spontaneous utterances, which we deem to be admissible."); *United States v. Rogers*, 41 F.3d 25, 31 (1st Cir. 1994)(upholding admissibility of statements that were "voluntary and spontaneous"). Much as co-defendant Rivera's statement that they did not need licenses in response to the question directed to Perez, this was a voluntary, spontaneous utterance and is therefore, admissible.

## Conclusion

The United States submits that the evidentiary hearing will show that the defendant was lawfully detained and that the statements were not obtained in violation of Miranda. Accordingly, the United States will urge the Court to deny the defendant's motion to suppress the evidence and his statements.

Respectfully submitted,

Michael J. Sullivan
UNITED STATES ATTORNEY

*Sandra S. Bower*
SANDRA S. BOWER
ASSISTANT UNITED STATES ATTORNEY
United States Courthouse
1 Courthouse Way, Suite 9200
Boston, MA 02210
617/748-3184

## CERTIFICATE OF SERVICE

This is to certify that I have this day served upon the persons listed below a copy of the foregoing document by U.S. mail:

John W. Laymon, Esq.
77 Franklin Street, 3d Floor
Boston, MA 02110

This 14th day of May 2004.

Sandra S. Bower
ASSISTANT UNITED STATES ATTORNEY