## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

```
                              )
UNITED STATES OF AMERICA      )
                              )
            v.                )  CRIMINAL NO. 03-10389-PBS
                              )
DAVID PEREZ,                  )
            Defendant.        )
                              )
```

### MEMORANDUM AND ORDER

August 10, 2004

Saris, U.S.D.J.

### I. INTRODUCTION

Defendant David Perez, charged with being a felon in possession and an armed career criminal, filed a motion to suppress all evidence seized on February 14, 2001 on the ground that the search of the vehicle in which he was a passenger violated his Fourth Amendment rights. He also seeks to suppress any statement made during his custodial interrogation on the ground that such interrogation violated his Fifth Amendment rights. At the evidentiary hearings on July 2 and 16, 2004, Officer John Cullen and Officer Michael Burke of the Lowell, Massachusetts Police Department testified about the stop. After hearing, the motion to suppress based on violation of the Fourth Amendment is **DENIED**. The motion to suppress statements in violation of the Fifth Amendment is **ALLOWED** in part and **DENIED** in part.

## II. FINDINGS OF FACT

Around 7:00 p.m. on February 14, 2001, two Lowell police officers, Officer John Cullen and Officer Michael Burke, noticed a double-parked Durango on Jackson street while on routine patrol in Lowell.  The officers pulled up alongside the vehicle and Officer Cullen, the passenger in the police cruiser, motioned to the driver, Mr. Rivera, to roll down the window.  Observing that the driver's eyes were glassy and his speech was slurred, Officer Cullen asked Rivera if he had taken anything.  Rivera replied that he had smoked some dope.  The officers told Rivera and the passenger, Perez, to remain in the vehicle, and parked the cruiser behind the Durango.

Both Officer Burke and Officer Cullen approached the vehicle and requested Rivera's license and registration.  The two officers returned to the cruiser to check Rivera's license.  Upon seeing Rivera, Officer Burke recalled that he had arrested Rivera for armed assault with intent to murder in June of 1999.  Indeed, he remembered wrestling him to the ground to handcuff him. Officer Cullen radioed for a warrant check of Rivera, which revealed an outstanding warrant for the incident.  Neither Officer Cullen nor Officer Burke had seen a firearm in the vehicle at this time.  Rivera was asked to step out of the vehicle, and he was arrested by Officer Cullen, with Officer Burke standing beside him on the driver's side of the vehicle.

2

When asked whether he would prefer the passenger to move the
vehicle or whether the police ought to tow it, Rivera replied
that he preferred the removal of the vehicle by his friend.
Rivera was placed in the cruiser to await the transportation
wagon.

Still standing on the driver's side of the vehicle, Officer
Cullen requested Mr. Perez's driver's license in order to verify
that he would be able to drive the car.  Perez responded that he
did not have his license with him but stated his name and birth
date for a license check, as requested.  Officer Cullen returned
to the vehicle and instant-messaged dispatch for a license and
warrant check on Perez.

Although the turret transcript does not reflect the first
warrant check for Perez, a fact trumpeted by defense counsel,
Cullen explained he used several methods of communication with
dispatch: the radio, instant messaging on the computer in the
cruiser, and the cellphone.  The computer can verify driver
information, like possession of a license, but not criminal
histories.  Cullen verified that Perez had a license; that there
could possibly be an outstanding warrant against Perez; and that
the birth dates were not a perfect match.  Cullen went back to
Perez to confirm his date of birth.

After Rivera's arrest, Mark Walker,[1] an acquaintance of

--------

[1]     Perez called Mr. Walker as a witness, but he asserted
the Fifth Amendment.

3

Rivera and Perez, offered to move the vehicle, and the police radioed dispatch for a warrant check on both Walker and Perez.

While awaiting the second warrant check, Officer Cullen returned to the Durango and asked Perez to step out of the vehicle.  When Perez exited the car, Officer Cullen noticed a silver handgun under the passenger seat in plain view.  Officer Cullen ordered Perez to the ground and handcuffed him.  Officer Burke assisted Officer Cullen with Perez's arrest.  After securing the gun, Officer Cullen asked Perez if he had a license to carry a firearm.  Perez answered "no."  Rivera also answered Officer Cullen's question, stating "We don't need them," after which Perez added, "My best bud got capped."  Perez was then allowed to return to his feet.  Officer Cullen subsequently learned that there were no outstanding warrants against him. Perez was not advised of his <u>Miranda</u> rights until he was at the police station.

A subsequent search of Perez revealed marijuana and over $4,000 in cash wrapped in thousand dollar bundles of $20's and $100's.  Another handgun was recovered from the vehicle, and marijuana and over $4,000 in cash were found on Mr. Rivera.

### III. DISCUSSION

**A. Detention of the Driver**

The threshold issue is whether this case involves a traffic

stop which should be analyzed under <u>Whren v. United States</u>, 517
U.S. 806 (1996) and its progeny or whether it falls within the
<u>Terry</u> stop caselaw.  <u>Terry v. Ohio</u>, 392 U.S. 1 (1968).  While the
motive for the initial inquiry on February 14, 2001 was the
violation of the double-parking traffic ordinance, the police
never stopped the vehicle since it was parked when the police
noticed it.  After the observation of the glassy eyes, the brief
questioning of the driver during the initial encounter could be
characterized as either a traffic or a <u>Terry</u> stop.  <u>See Hibel v.
Sixth Judicial District of Nevada</u>, 124 S. Ct. 2451, 2458 (2004)
(stating that the brief questioning of an individual outside a
parked car is a legal <u>Terry</u> stop so long as there is reasonable
suspicion of wrongdoing).  Under either characterization, the
analysis is the same in the circumstances of this case.

A <u>Terry</u> stop is made when "a policeman who lacks probable
cause but whose 'observations lead him reasonably to suspect'
that a particular person has committed, is committing, or is
about to commit a crime, detain[s] that person briefly in order
to 'investigate the circumstances that provoke suspicion.'" <u>Id.</u>
(quoting <u>United States v. Brignoni-Ponce</u>, 422 U.S. 873, 881
(1975)).  <u>Terry</u> specifies a two-part inquiry as to the legality
of a warrantless search and seizure: "whether the officer's
action was justified at its inception, and whether it was
reasonably related in scope to the circumstances which justified

the interference in the first place." <u>Terry</u>, 392 U.S. at 19-20.

The <u>Terry</u> stop of the driver was grounded in a reasonable suspicion of criminal wrongdoing (i.e., driving under the influence and unlawful possession of a narcotic) because Rivera stated he had smoked some dope and he looked as if he was under the influence of marijuana.  Once the results of the warrant check on Rivera established an outstanding warrant, the police had probable cause to arrest him.

## B. Detention of the Passenger

The harder question is whether the police had a right to detain the passenger after the driver had been arrested.  <u>See</u> <u>Sibron v. New York</u>, 392 U.S. 40, 64 (1968) (stating that reasonable suspicion of a passenger is not generated by his or her association with the driver).  The initial detention pending Rivera's record check was lawful.  While an officer may, consistent with the Fourth Amendment, detain a passenger during a traffic stop, even without particularized reasonable suspicion that a passenger has committed any crime, the authority of the police to detain does not extend beyond the valid reason for the stop unless something occurs during the stop that generated reasonable suspicion to justify further detention.  <u>See</u> <u>United States v. Starks</u>, 301 F. Supp. 2d 76, 85-86 (D. Mass. 2004).

The detention of Perez after the arrest of Rivera to check his claim that he had a license was reasonable because Rivera

asked that Perez drive the car and he didn't have his license on him. "In the ordinary course, a police officer is free to ask a person for identification without implicating the Fourth Amendment." See Hibel, 124 S. Ct. at 2458; Starks, 301 F. Supp. 2d at 85-86 (holding that "the police had a valid interest in finding a lawful way for the vehicle to be removed").

The next question is whether the continued brief detention of Perez based on the preliminary inconclusive response to inquiries about Perez's warrant record was reasonable. It was at this point -- after the license had been verified, but pending the second warrant check -- that Perez was asked to get out of the car for the police officer's safety. The Government argues that the inconclusive warrant check coupled with the fact that his friend was wanted for a violent crime provided reasonable suspicion to continue to hold him. Defendant argued this was all a ruse to get evidence against the Defendant, and that there was no inconclusive warrant check.

I conclude that the police were justified in briefly detaining Perez to clarify whether there was a warrant because there was a reasonable suspicion that he had an outstanding warrant. Furthermore, Cullen, who was alone with the passenger, had the right to ask the passenger to leave the vehicle during the record check for the officer's own safety. See Maryland v. Wilson, 519 U.S. 408, 415 (1997) (holding that a police officer may order a passenger to step out of a vehicle during a routine

7

traffic stop as a safety measure).  An officer is entitled to take reasonable steps to insure his own safety, including asking the passenger to exit the car.  See <u>United States v. Hendricks</u>, 319 F.3d 993, 1004 (7th Cir. 2003) (involving a passenger).  Once Perez left the vehicle, the gun was in plain view.

Furthermore, the police did not need a ruse to search the car.  Rather, the police had the right to search the driver and passenger compartments of the car after the driver's arrest and removal from the car.  See <u>New York v. Belton</u>, 453 U.S. 454, 460 (1981) ("[W]hen a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile."); <u>Thornton v. United States</u>, 124 S. Ct. 2127, 158 L. Ed. 2d 905 (2004) (holding that the validity of a vehicular search is not dependent upon whether the arrested individual is inside the car).

### C. Perez's Statements

The Defendant argues that statements made by Mr. Perez regarding his lack of a firearm license, prior to notification of his <u>Miranda</u> rights, ought to be struck from the record because he was in custody in handcuffs.  When Officer Cullen asked Perez if he had a license, Perez answered no.  Wisely, the Prosecution is not pressing for the admissibility of this statement, which the Defendant made prior to receiving the <u>Miranda</u> warning.  <u>Cf.</u> <u>Colorado v. Connelly</u>, 479 U.S. 157, 169 n.3 (1986) ("Petitioner

8

conceded that . . . when Officer Anderson handcuffed respondent, the custody requirement of <u>Miranda</u> was satisfied.").

However, the Government asserts that Mr. Perez's second statement to the police, "My best friend got capped," was a spontaneous utterance made in response to Rivera's comment to the police, not in response to custodial interrogation. Spontaneous utterances are generally not subject to <u>Miranda</u> protection. <u>Miranda v. Arizona</u>, 384 U.S. 436, 478 (1966) ("Any statement given freely and voluntarily without any compelling influences is, of course, admissible in evidence."); <u>United States v. Shea</u>, 150 F.3d 44, 48 (1st Cir. 1998) ("[S]tatements were spontaneous utterances, which we deem to be admissible."), <u>recognized as abrogated on other grounds</u>, <u>United States v. Mojica-Baez</u>, 229 F.3d 292 (1st Cir. 2000); <u>United States v. Rogers</u>, 41 F.3d 25, 31 (1st Cir. 1994) (upholding admissibility of statements that were "voluntary and spontaneous"); <u>United States v. Avery</u>, 717 F.2d 1020, 1025 (6th Cir. 1983) (holding that a spontaneous and voluntary utterance does not require <u>Miranda</u> protection).

Because the initial question violated <u>Miranda</u>, the Court must determine whether the second statement is so tainted that it too is inadmissible. Voluntary statements are admissible even if prior statements by the defendant were obtained in violation of <u>Miranda</u> so long as there is a break in the causal chain. <u>Cf. Oregon v. Elstad</u>, 470 U.S. 298, 306 (1985) ("[A] confession obtained through custodial interrogation after an illegal arrest

9

should be excluded unless intervening events break the causal connection between the illegal arrest and the confession so that the confession is 'sufficiently an act of free will to purge the primary taint.'") (quoting <u>Taylor v. Alabama</u>, 457 U.S. 687, 690 (1982)(internal quotations omitted)).

Although Perez had just answered a one-question inquiry by the police regarding his license, his statement was a spontaneous utterance because it was made in response to a statement by Rivera, which broke the causal chain.  Therefore, it is admissible.

### ORDER

The motion to suppress evidence due to violation of the Fourth Amendment is **DENIED**.

The motion to suppress statements by Perez in violation of the Fifth Amendment is **ALLOWED** in part for the "no" response by Perez and **DENIED** in part for the subsequent statement by Perez that "my best bud got capped."

**S/PATTI B. SARIS**
United States District Judge

10